IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN FOUT, NANCY FOUT,
J&N MANAGEMENT, LLC and
J&N MANAGEMENT ENTERPRISES, LLC,

    Plaintiffs,

v.                                           Civil Action No. 1:15CV68
                                                      (STAMP)
EQT PRODUCTION COMPANY,
a Pennsylvania corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER
REGARDING DEFENDANT'S MOTIONS IN LIMINE**

Pending before this Court are motions in limine filed by the defendant, EQT Production Company ("EQT"). The trial of this civil action[1] is scheduled to commence on April 10, 2018. Now before the Court are EQT's fourteen pending motions in limine which have been fully briefed: (1) Motion in Limine to Preclude Argument or Evidence of Alter Ego Relationship or the Sale Price Received by EQT Energy, LLC (ECF No. 82); (2) Motion in Limine to Preclude Argument or Evidence that Other Lessees Do Not Deduct or Allocate Post-Production Costs (ECF No. 83); (3) Motion in Limine to Preclude Argument or Evidence that Post-Production Costs Were Purportedly Never Defined or Invoiced to Plaintiffs, or Authorized by Plaintiffs (ECF No. 84); (4) Motion in Limine to Preclude Argument or Evidence that Allocation of Post-Production Costs Is

---

    [1]For a more thorough background of this civil action, see ECF No. 153.

Not Permitted by Other Leases (ECF No. 85); (5) Motion in Limine to Preclude Argument or Evidence that Allocation of Post-Production Costs Is Not Permitted by the Lease (ECF No. 86); (6) Motion in Limine to Preclude Argument or Evidence that Post-Production Costs Do Not Enhance the Value of the Natural Gas Produced from the Lease Premises (ECF No. 87); (7) Motion in Limine to Preclude Argument or Evidence Regarding Claims of Fraud or Misrepresentation (ECF No. 88); (8) Motion in Limine to Preclude Argument or Evidence Regarding the Henry Hub or Other Index Prices (ECF No. 89); (9) Motion in Limine to Preclude Argument or Evidence that the Price at which Gas Sold from the Lease Premises Is Purportedly Less than Fair Market Value (ECF No. 90); (10) Motion in Limine to Preclude Argument or Evidence Regarding Natural Gas Liquids (ECF No. 91); (11) Motion in Limine to Preclude Argument or Evidence that Royalties Paid to Plaintiffs by EQT Should Be Paid Without Deduction or Allocation of Any Post-Production Costs (ECF No. 92); (12) Motion in Limine to Preclude Argument or Evidence to Support a Claim for Punitive Damages (ECF No. 93); (13) Motion in Limine to Preclude Argument or Evidence Regarding Rulings Made in <u>McDonald v. EQT Production Company</u> or <u>The Kay Company, LLC v. EQT Production Company</u> (ECF No. 94); and (14) Motion in Limine to Preclude Argument or Evidence Regarding Senate Bill 360 (ECF No. 149).

This Court has reviewed and considered the fully briefed motions and the memoranda and exhibits submitted by the parties as

well as the comments by counsel concerning these motions at the pretrial conference on April 2, 2018. This Court will address those motions in limine and set forth its findings, as discussed below.

### EQT's Motions in Limine

1. <u>Motion in Limine to Preclude Argument or Evidence of Alter Ego Relationship or the Sale Price Received by EQT Energy, LLC (ECF No. 82) is GRANTED</u>.

EQT anticipates that the plaintiffs may seek to argue that there is purportedly an alter ego relationship between EQT and other affiliates and/or that the price upon which the plaintiffs' royalties are calculated should be based upon the price for natural gas sales that is received by EQT Energy, LLC, which is not a party to this case. EQT argues that the plaintiffs' contentions regarding affiliated and non-affiliated sales are irrelevant because EQT is the only defendant in the case and the only lessee obligated to pay royalties to the plaintiffs. Additionally, EQT argues that, even if the plaintiffs had included a claim of alter ego relationship or non-affiliate pricing in their complaint, any such claims were abandoned and waived as of the June 20, 2017 hearing, where discovery was limited to the reasonableness of post-production costs actually incurred by the lessee.

In response, the plaintiffs argue that the downstream price paid to EQT Energy, LLC is the basis of all royalties. The

plaintiffs explain as follows: (1) the enhanced downstream price, and only the enhanced downstream price, must be paid to the plaintiffs in order for EQT to receive any deductions; (2) adopting Leggett v. EQT Production Company, 800 S.E.2d 850 (W. Va.), cert. denied, 138 S. Ct. 472 (2017), requires the enhanced downstream price to be the basis of royalties; (3) EQT has stated on the record that it pays the downstream or interstate pipeline rate as royalty, and the motion in limine would bar the downstream price, the only legal price, from being considered; and (4) without paying the downstream price to the plaintiffs, no deductions are possible. Accordingly, the plaintiffs oppose the motion in limine and move this Court to base all deductions upon only the enhanced downstream price that EQT received for the natural gas.

This Court finds that the issue of alter ego was not pled in the plaintiffs' complaint and that, even if it was, it was waived at the June 20, 2017 status conference during which the parties agreed that the sole remaining issue is the reasonableness of the post-production expenses actually incurred by the lessee.[2] Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence of Alter Ego Relationship or the Sale Price Received by EQT Energy, LLC (ECF No. 82) is GRANTED.

---

[2]The parties' express waiver of all other issues is discussed in further detail in this Court's Memorandum Opinion and Order Denying Plaintiffs' Motion for Partial Summary Judgment and Granting in Part and Denying in Part Defendant's Motion for Summary Judgment. ECF No. 153 at 9-10.

2. <u>Motion in Limine to Preclude Argument or Evidence that Other Lessees Do Not Deduct or Allocate Post-Production Costs (ECF No. 83) is GRANTED</u>.

EQT notes that the plaintiffs are parties to oil and gas leases with entities other than EQT and anticipates that the plaintiffs will seek to argue that lessees to the other leases do not deduct or allocate post-production costs before paying royalties to the plaintiffs. EQT argues that evidence regarding the practices of other lessees not party to this case is not relevant to the issue to be decided at trial.

In response, the plaintiffs argue that information regarding other leases is relevant to evaluate post-production costs of EQT because none of EQT's deductions have ever been followed in the oil and gas industry. The plaintiffs contend that the procedures in the industry are relevant and material to determine whether EQT's deductions meet the reasonable and necessary standards set forth in <u>Leggett</u>.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This Court finds that the practices of other lessees not party to this case is not relevant to the sole remaining issue in this matter, which is the reasonableness of the post-production expenses actually incurred by the lessee.

5

Specifically, the practices of other lessees is not of consequence to the fact-finder in determining the sole remaining issue in this case. Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence that Other Lessees Do Not Deduct or Allocate Post-Production Costs (ECF No. 83) is GRANTED.

3. <u>Motion in Limine to Preclude Argument or Evidence that Post-Production Costs Were Purportedly Never Defined or Invoiced to Plaintiffs, or Authorized by Plaintiffs (ECF No. 84) is DEFERRED</u>.

EQT anticipates that the plaintiffs may seek to argue that the post-production costs allocated to the plaintiffs were purportedly never defined or invoiced to the plaintiffs, or authorized by them. EQT argues that any such reference or evidence has no tendency to prove or disprove the sole issue to be decided in this case (i.e., whether the post-production costs incurred and allocated to the plaintiffs are reasonable). EQT contends that there is no requirement that EQT define or invoice post-production costs to the plaintiffs, much less that these costs be authorized by them.

The plaintiffs respond that the motion in limine should be denied because EQT should be forced to define "costs" and "invoice costs" before they are paid. The plaintiffs reason that a written policy is reasonable and necessary.

This Court finds it appropriate to further consider at trial how the plaintiffs intend to use evidence that the post-production costs were never defined or invoiced to them. Accordingly, EQT's

Motion in Limine to Preclude Argument or Evidence that Post-Production Costs Were Purportedly Never Defined or Invoiced to Plaintiffs, or Authorized by Plaintiffs (ECF No. 84) is DEFERRED.

4. <u>Motion in Limine to Preclude Argument or Evidence that Allocation of Post-Production Costs Is Not Permitted by Other Leases (ECF No. 85) is GRANTED</u>.

EQT anticipates that the plaintiffs may seek to argue that the deduction or allocation of post-production costs is not permitted by other oil and gas leases to which the plaintiffs are parties. EQT argues that evidence regarding other leases is not relevant to this issue to be decided at trial. EQT further argues that such evidence would wrongly suggest to the jury that the lease at issue must allow the pro rata deduction or allocation of post-production costs, which is contrary to <u>Leggett</u>.

In response, the plaintiffs argue that the motion in limine should be denied because of the difficulty of defining post-production costs. The plaintiffs contend that costs must be properly allocated, and that EQT cannot apportion its costs on the plaintiffs' well.

This Court finds that evidence of other leases is not relevant to this civil action because it is of no "consequence in determining" the sole remaining issue of the reasonableness of the post-production expenses actually incurred by the lessee. Fed. R. Evid. 401. Additionally, this Court finds that, even if evidence

of other leases were relevant, its probative value would be substantially outweighed by the risk of unfair prejudice and, thus, would be excluded pursuant to Federal Rule of Evidence 403. Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence that Allocation of Post-Production Costs Is Not Permitted by Other Leases (ECF No. 85) is GRANTED.

5. <u>Motion in Limine to Preclude Argument or Evidence that Allocation of Post-Production Costs Is Not Permitted by the Lease (ECF No. 86) is DENIED AS MOOT</u>.

EQT anticipates that the plaintiffs may seek to argue that the deduction or allocation of post-production costs is not permitted by the lease. EQT notes the <u>Leggett</u> holding that "[r]oyalty payments pursuant to an oil or gas lease governed by West Virginia Code § 22-6-8(e) (1994) may be subject to pro rata deduction or allocation of all reasonable post-production expenses actually incurred by the lessee." Thus, EQT argues that evidence that the lease does not expressly permit the deduction or allocation of post-production costs has no tendency to prove or disprove whether these costs may be allocated or deducted here, much less prove or disprove the sole issue to be decided in this case.

The plaintiffs do not oppose this motion in limine. The plaintiffs agree that the lease does not permit post-production costs that enhance the value of the product, but that the law does. Accordingly, EQT's Motion in Limine to Preclude Argument or

8

Evidence that Allocation of Post-Production Costs Is Not Permitted by the Lease (ECF No. 86) is DENIED AS MOOT.

6. <u>Motion in Limine to Preclude Argument or Evidence that Post-Production Costs Do Not Enhance the Value of the Natural Gas Produced from the Lease Premises (ECF No. 87) is DEFERRED</u>.

EQT anticipates that the plaintiffs may seek to argue that the post-production costs at issue in this case should not be permitted because they purportedly do not "enhance" the value or quality of the natural gas produced from the lease premises. EQT notes that the gathering and compression services provided and at issue in this case are exactly the types of post-production services that <u>Leggett</u> already recognized as enhancing the value of the gas. Accordingly, EQT argues that there is no issue of fact to be decided by the jury on the issue of whether these services enhance the value of the gas, and, thus, any such argument is irrelevant and inadmissable.

In response, the plaintiffs argue that the motion in limine should be denied the enhanced downstream price must be paid to all lessors, but, in this case, the plaintiffs received an impermissible upstream index price with deductions.

This Court finds it appropriate to further consider at trial how the plaintiffs intend to use evidence that the post-production costs do not enhance the value of the natural gas. Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence that Post-

Production Costs Do Not Enhance the Value of the Natural Gas Produced from the Lease Premises (ECF No. 87) is DEFERRED.

7. <u>Motion in Limine to Preclude Argument or Evidence Regarding Claims of Fraud or Misrepresentation (ECF No. 88) is GRANTED</u>.

EQT anticipates that the plaintiffs may seek to offer evidence regarding claims of fraud or misrepresentation. EQT argues that any claims that the plaintiffs may have had with respect to alleged fraud or misrepresentation were abandoned and waived as of the June 20, 2017 hearing. EQT further notes that discovery in this case has been limited to the issue of the reasonableness of post-production costs based upon the parties' agreement and this Court's order pursuant to the June 20, 2017 hearing.

In response, the plaintiffs argue that they alleged counts of fraud and negligent misrepresentation in their complaint, and that the claims must be presented to the jury for evaluation.

This Court finds that the plaintiffs waived their claims for fraud and misrepresentation at the June 20, 2017 status conference, at which the parties agreed that the sole remaining issue is the reasonableness of the post-production expenses actually incurred by the lessee. Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence Regarding Claims of Fraud or Misrepresentation (ECF No. 88) is GRANTED.

8. **Motion in Limine to Preclude Argument or Evidence Regarding the Henry Hub or Other Index Prices (ECF No. 89) is GRANTED**.

EQT anticipates that the plaintiffs may offer evidence of the "Henry Hub index" and its pricing or other pipeline distribution pricing, particularly that the "Henry Hub index" price should be used to determine the wellhead price upon which the plaintiffs' royalties should be calculated. EQT argues that the "Henry Hub" is a distribution hub located on the natural gas pipeline system in Louisiana, which is a distant market far from the wells located on the lease premises in this case and the pipeline systems into which the gas is sold. Thus, EQT argues that evidence concerning pricing at the "Henry Hub" has no tendency to prove or disprove the price upon which the plaintiffs' royalties should be paid, much less provide evidence of the sole issue to be decided in this case. EQT further contends that the plaintiffs waived any claim they may have had regarding the market value of natural gas sold from the lease premises as of the June 20, 2017 hearing.

In response, the plaintiffs argue that the "Henry Hub index" is relevant to show that the enhanced downstream price is not paid to the plaintiffs.

This Court finds that the "Henry Hub" in Louisiana is located in too distant of a market from the wells at issue in this case to be relevant. Additionally, the "Henry Hub" index is not relevant because EQT did not use the "Henry Hub" index in calculating the

plaintiffs' royalty payments.  In sum, this Court finds that evidence regarding the "Henry Hub" index has no tendency to make any fact of consequence to the sole remaining issue in this civil action "more or less probable than it would be without the evidence." Fed. R. Evid. 401.  Further, even if relevant, such evidence would not be admissible under Federal Rule of Evidence 403.  Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence Regarding the Henry Hub or Other Index Prices (ECF No. 89) is GRANTED.

9. <u>Motion in Limine to Preclude Argument or Evidence that the Price at which Gas Sold from the Lease Premises Is Purportedly Less than Fair Market Value (ECF No. 90) is DEFERRED</u>.

EQT anticipates that the plaintiffs may seek to argue that the price at which gas sold from the lease premises is purportedly less than market value.  EQT argues that any claim the plaintiffs may have had that the sales price for natural gas sold from the lease premises was less than market value was abandoned and waived as of the June 20, 2017 hearing, where discovery was limited to the sole issue of the reasonableness of post-production costs actually incurred by the lessee.

In response, the plaintiffs argue that the motion in limine should be denied because the plaintiffs are entitled to gas at the enhanced downstream price received by EQT Midstream.

This Court finds it appropriate to further consider at trial how the plaintiffs intend to use evidence that the price at which the gas is sold is less than fair market value. Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence that the Price at which Gas Sold from the Lease Premises Is Purportedly Less than Fair Market Value (ECF No. 90) is DEFERRED.

10. <u>Motion in Limine to Preclude Argument or Evidence Regarding Natural Gas Liquids (ECF No. 91) is GRANTED</u>.

EQT anticipates that the plaintiffs may seek to offer evidence regarding natural gas liquids or seek to obtain royalties for the alleged sale of natural gas liquids. EQT argues that, at the June 20, 2017 hearing, the plaintiffs abandoned and waived any claim they may have had with respect to natural gas liquids. Thus, EQT represents that, since June 20, 2017, it has conducted no discovery to explore the basis for claims that the plaintiffs may have had regarding natural gas liquids. EQT further argues that the undisputed evidence in this case establishes that EQT sells gas at or near the wellhead before processing or separation of any natural gas liquids and does not separately sell any natural gas liquids from natural gas produced from wells located on the Lease premises. Thus, EQT contends that there is no valid basis upon which to impose any obligation on EQT to pay royalties for something that it does not sell.

13

In response, the plaintiffs argue that EQT wishes to overlook natural gas liquids even though they received compensation for them, which further damages the plaintiffs and enriches EQT. The plaintiffs contend that the motion in limine should be denied because, by wrongfully deducting monetary costs and taxes and not compensating the plaintiffs for natural gas liquids, EQT has failed to properly pay royalties and thereby intentionally and wrongfully breached the terms of the lease.

This Court finds that the plaintiffs waived any claims regarding natural gas liquids at the June 20, 2017 status conference, at which the parties agreed that the sole remaining issue is the reasonableness of the post-production expenses actually incurred by the lessee. Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence Regarding Natural Gas Liquids (ECF No. 91) is GRANTED.

11. <u>Motion in Limine to Preclude Argument or Evidence that Royalties Paid to Plaintiffs by EQT Should Be Paid Without Deduction or Allocation of Any Post-Production Costs (ECF No. 92) is GRANTED</u>.

EQT anticipates that the plaintiffs may argue that EQT should pay them royalties without deduction or allocation of any post-production costs. EQT contends that any such argument is contrary to <u>Leggett</u>. EQT argues that there is no dispute that West Virginia Code § 22-6-8 governs the royalties to be paid to the plaintiffs

for natural gas and/or oil produced from wells drilled or reworked on the property covered by the lease after the enactment of the Flat-Rate Statute.

In response, the plaintiffs argue that EQT has furnished to them statements as to their deductions totaling $250,155.34, which would total approximately $1,000,000.00 for all lessors if the plaintiffs received approximately one-fourth of the royalty of the wells. The plaintiffs contend that, as the owner of seven-eights of the well, EQT would be responsible for eight times the royalty, or total deductions of $800,000.00. Thus, the plaintiffs argue that the motion in limine be denied unless EQT can establish $800,000.00 in deductions from the well that have enhanced the product, are properly allocated, actually incurred, and reasonable.

This Court agrees with EQT's contention that any argument that EQT should pay the plaintiffs royalties without deduction or allocation of any post-production costs is contrary to Leggett. Under Leggett, EQT is permitted to deduct post-production expenses from the plaintiffs' royalty payments that are reasonable and actually incurred by the lessee. Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence that Royalties Paid to Plaintiffs by EQT Should Be Paid Without Deduction or Allocation of Any Post-Production Costs (ECF No. 92) is GRANTED.

12. <u>Motion in Limine to Preclude Argument or Evidence to Support a Claim for Punitive Damages (ECF No. 93) is GRANTED</u>.

EQT anticipates that the plaintiffs may seek to offer evidence to support a claim for punitive damages against EQT. EQT contends that any claim the plaintiffs may have had for punitive damages was abandoned and waived as of the June 20, 2017 hearing.

In response, the plaintiffs argues that the motion in limine should be denied because Count VI of the complaint properly alleges punitive damages and because whether EQT has acted in a willful, wanton, reckless, or fraudulent manner is a question of fact for the jury.

This Court finds that the plaintiffs waived any claims regarding punitive damages at the June 20, 2017 status conference, at which the parties agreed that the sole remaining issue is the reasonableness of the post-production expenses actually incurred by the lessee. Additionally, even if the plaintiffs had not waived their punitive damages claim at the June 20, 2017 status conference, punitive damages are not an available remedy in a contract action, which this essentially is. <u>See</u> <u>Warden v. Bank of Mingo</u>, 341 S.E.2d 679, 684 (W. Va. 1985) ("[P]unitive damages are generally unavailable in pure contract actions."). Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence to Support a Claim for Punitive Damages (ECF No. 93) is GRANTED.

13. <u>Motion in Limine to Preclude Argument or Evidence Regarding Rulings Made in McDonald v. EQT Production Company or The Kay Company, LLC v. EQT Production Company (ECF No. 94) is GRANTED</u>.

EQT anticipates that the plaintiffs may seek to reference rulings made in a case previously pending in the United States District Court for the Southern District of West Virginia, <u>McDonald v. EQT Production Company</u>, Civil Action No. 2:11CV418, and a case currently pending before Judge John Preston Bailey in the United States District Court for the Northern District of West Virginia, <u>The Kay Company, LLC v. EQT Production Company</u>, Civil Action No. 1:13CV151. EQT states that the court in <u>McDonald</u> did not consider any EQT evidence regarding the reasonableness of post-production costs allocated in that case pursuant to the terms of the parties' leases.

Additionally, EQT indicates that, unlike here, none of the leases at issue in that case included a flat well royalty provision and no royalties at issue were paid pursuant to West Virginia Code § 22-6-8. EQT also contends that, while <u>The Kay Company</u> involves some claims concerning royalty payments made pursuant to West Virginia Code § 22-6-8, the period for discovery is still open in that case, and neither the court nor the factfinder has considered much of the evidence presented here regarding the reasonableness of the post-production costs. Thus, EQT argues that the courts' rulings in <u>McDonald</u> and <u>The Kay Company</u> regarding the costs that

17

may have been permissibly deducted from lessors' royalties are not relevant here.

In response, the plaintiffs argue that, while McDonald and The Kay Company, are not controlling, they are helpful in understanding the nature of post-production costs and should be considered. The plaintiffs contends that the rulings in those cases should be consistent with Leggett, and, thus, the motion in limine should be denied.

This Court finds that evidence regarding rulings made in McDonald and The Kay Company must be excluded because they have no "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Furthermore, even if evidence of those rulings were relevant, this Court finds that their probative value would be substantially outweighed by the risk of confusing the issues or misleading the jury and, thus, would be excluded pursuant to Federal Rule of Evidence 403. Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence Regarding Rulings Made in McDonald v. EQT Production Company or The Kay Company, LLC v. EQT Production Company (ECF No. 94) is GRANTED.

14. Motion in Limine to Preclude Argument or Evidence Regarding Senate Bill 360 (ECF No. 149) is GRANTED.

In its final motion in limine, EQT addresses Senate Bill 360, which the West Virginia Legislature passed on March 2, 2018, in response to the Leggett decision. EQT notes that Senate Bill 360

18

dramatically changes the law with respect to the payment of royalties pursuant to West Virginia Code § 22-6-8. EQT anticipates that the plaintiffs may seek to argue or provide evidence of the recent amendments to the royalty payment provisions of West Virginia Code § 22-6-8, which were enacted pursuant to Senate Bill 360. EQT argues that those recent amendments may not be retroactively applied to the plaintiffs' claims regarding the payment of royalties. Thus, EQT contends that Senate Bill 360 is not relevant in this case.

The plaintiffs address Senate Bill 360 in their Supplemental Brief and Response to Defendant's Motion in Limine Regarding Issues for Litigation Set Forth in Paragraph VIII of the Joint Pretrial Order. ECF No. 151. In the response, the plaintiffs discuss Leggett and Senate Bill 360, and move this Court to clarify which will be followed by this Court at trial.

At trial, this Court will follow the law as it is set forth in Leggett v. EQT Production Company, 800 S.E.2d 850 (W. Va.), cert. denied, 138 S. Ct. 472 (2017). This Court finds that EQT is correct that Senate Bill 360 cannot apply retroactively to the plaintiffs' claims in this case. See Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont, 480 S.E.2d 538, 543-44 (W. Va. 1996) ("[U]nless expressly stated otherwise by the statute, [amendments to a statute] will not apply to pending cases or cases filed subsequently based upon facts completed before the statute's

19

effective date."). Thus, pursuant to Federal Rule of Evidence 401, Senate Bill 360 is not relevant in this case because it is of no consequence in determining the action. Accordingly, EQT's Motion in Limine to Preclude Argument or Evidence Regarding Senate Bill 360 (ECF No. 149) is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    April 6, 2018

>                          /s/ Frederick P. Stamp, Jr.
>                          FREDERICK P. STAMP, JR.
>                          UNITED STATES DISTRICT JUDGE